Case number 19-3094 United States of America v. Morris Jamel Johnson, appellant. Ms. Williamson for the appellant, Mr. Coleman for the appellate. Good morning, counsel. Ms. Williamson, when you're ready, please proceed. Good morning, your honors, and may it please the court. Your honors, Morris Johnson, an honorably discharged military veteran and firearms hobbyist, was convicted of six counts related to his possession of two modified 37-millimeter shells. The government agrees that four of Mr. Johnson's convictions should merge into two. The government also agrees that Mr. Johnson should get a hearing on his ineffective assistance of counsel claim. But Mr. Johnson's other two claims also warrant this court's relief. First, Mr. Johnson's two counts of conviction for possessing two modified shells in the same place and at the same time constitute a single course of conduct. Under District of Columbia law, courts presume that the unit of prosecution for weapons possessions offenses is the instance of applies unless D.C. counsel expressed a clear intention that the statute permits multiple convictions. There was no such intention here. Accordingly, this court should remand this matter to the district court with instructions to vacate. I'll ask you a question about this part of your argument. So the statute, it speaks in terms of a person who possesses a weapon of So I think it says a person who manufactures or possesses. That's right. Would you say the same argument that you're making now applies to manufacturing also? So that, for example, if the police search a house and they see two of the same object, both being manufactured, let's say in separate rooms of the house, but it's one house, would it be one manufacturer, even though there's two different objects being manufactured in two rooms of the house? Or would it be only one manufacturer because there's one process of manufacturing going on in two different places in the house? Your Honor, the question would be whether this was one course of conduct. The government could allege that those were two separate courses of conduct, such that possession occurred separately. Under the circumstances Your Honor outlined, likely that manufacturer would constitute one count. Why is that? Because it just feels to me like with manufacturing, it seems like there's two manufacturers going on, not just one, because there's two machines, let's say, that are doing the manufacturing and then there are two different adjacent rooms of the house. It doesn't feel like one manufacturer, even if it's the same person doing them, and even if it's the same person doing them at the same time, it does seem like there's two acts of manufacturing going on. And it's not clear to me why the analysis would be different for the word that's right next to it in the statute, possess. Yes, Your Honor. I think here the question is whether the D.C. Council expressed a clear intent that more than one count of conviction be possible under the statute. And for manufacturer as for possession, there's no such intent in the language of the statute or in the legislative history. So the court would look to that. But even your argument is limited to, I think you said, and I think your brief says, same place and same time. And what's a place? So if it's the same person and they own adjacent houses and there's one being possessed in one house and there's one possessed in another house, is that the same place? Your Honor, the presumption would be that those are different places, but the government could allege. And why? Why are they different? It's the same. It's the same person who owns both houses and it's the same person doing the possessing in both houses. Why the place? I thought in your brief that the place was identified as the District of Columbia. That's right. Two houses adjacent to each other are both going to be in places. Your Honor, in the facts of this case, Mr. Johnson's indictment alleged only that the possession was in the District of Columbia. But were the government to allege that possession or manufacturing occurred in two separate locations, the government could put on facts at trial demonstrating that the possession occurred in two different courses of conduct. So for example, in your Honor's hypo, those two separate locations in which the individual was owned by the same individual may constitute two different courses of conduct for purposes of the statute. Oh, so I guess I wasn't, does it turn just on the way the government alleges it? Because then you could allege two different rooms in the same house as being two different places too, or two different places in the same room as being two different places. Yes, Your Honor, under the terms of the statute, the D.C. Council intended for there to be punishment for one course of conduct. The government could allege that there were multiple instances of possession and attempt to prove that there were multiple instances of possession. In this case, the government didn't attempt to do that. The allegation was that Mr. Johnson possessed the two modified shells in the District of Columbia and that he possessed them on the same day in January. Let me ask you one last question along these for now at least. Your case in some ways has the best scenario for your side because the objects seem to be basically facsimiles of one another and it's largely in the same place. And as far as we know, it's at the same time because they were discovered at the same time. What if there were two dramatically different weapons of mass destruction? You know, one of them is a dirty bomb and one of them is a shell and they're both being possessed in the same house at the same time and they're discovered in the same search. Your argument's still the same that you're only perpetrating one act of possession even though one of them is a dirty bomb and the other one is a shell? Yes, Your Honor, it would be the same argument. And Bean demonstrates this. In Bean, the District of Columbia held that it was one course of possession when a defendant possessed both a knife and a rifle. And the court raised this issue sua sponte. And possession in that case occurred in two different locations in a vehicle. One of the items was in the front seat, in the passenger seat of the car, and the other was in the trunk. And the District of Columbia Court of Appeals sua sponte said that was one course of possession. Was that a possession statute or was it carry? That was in Bean, Your Honor. Yeah, I'm sorry, in Bean, did the statute bar possession or did it bar carrying? And maybe there's not a difference. It barred carrying, but the statute was quite similar. It was carrying a pistol or any deadly or dangerous weapon. And in that case, the statute, there was even stronger suggestion in the language of the statute that could be read to permit two different counts. But the court said no, that under those circumstances, there was only one count of possession permitted. If Your Honors don't have any additional questions on that at the moment, I'm happy to move to the closing argument issue. The district court abused its discretion by limiting Mr. Johnson's trial counsel's closing argument to only some, not all, of the favorable inferences from the record. Trial counsel wished to point the jury to the possible inference that a key government witness may have distorted evidence. Although the district court permitted trial counsel to argue some inferences from the record, the district court did not permit trial counsel to argue all permissible inferences. That, Your Honor, cut to the core of Mr. Johnson's case and was error. If Your Honors have no more questions, I will reserve the remainder of my time for rebuttal. Oh, I have a couple of questions. Is our standard of review on the closing argument issue you raised abuse of discretion? That's right, Your Honor. Why, then, is this an abuse of discretion? In other words, do you have any burden to show that, say, there are three inferences you get to argue to, and then you would have to show that, or would you, that the third inference you were not In other words, what would you have to show to prevail on an abuse of discretion? Yes, Your Honor. We would have to show that the district court did not permit trial counsel to argue inferences that cut to the core of the defendant's case. So under Your Honor's scenario of two inferences permitted but not a third, if that third inference cut to the core of the defendant's case, it would be an abuse of discretion not to permit trial counsel to argue that inference as well. So how does that work here in your case? Well, Your Honor, in this case, Mr. Johnson's core theory was that the government hadn't put on evidence supporting the inference that these were firearms under the statute. So the testimony of Agent Campbell about how the weapons were disassembled and how they appeared when he disassembled them, that cut to the core of Mr. Johnson's theory. And what you wanted to argue was, specifically, I thought that it's turned on the district court making an evaluation of whether or not the evidence showed the negative inference as to the officer. That's right, Your Honor. The district court permitted Mr. Johnson's trial counsel to argue that generally this agent's testimony couldn't be trusted. But trial counsel wished to point the jury directly to the inference that it could look to this prior district court's judgment about this agent's handling of evidence and say, from that, perhaps this agent may have distorted evidence. So why is it an abuse of discretion for the district court to say, essentially, that's another case, it's not before us, we don't know the facts, et cetera. And I'm just not going to allow that here when you are allowed, based on the evidence in this case, to argue the basic inference and not the specific example in another case not before the court. Yes, Your Honor. I think the reason it's an abuse of discretion here is because it cut the theory that this agent may have distorted evidence, specifically, cut to the core of Mr. Johnson's case. So if the district court had not permitted the evidence of this prior district court's finding about this agent, then there wouldn't be evidence on the record to support the inference. But once the district court permitted that evidence, there was evidence on the record to support an inference. And under Deloche, the district court must permit trial counsel to draw all reasonable inferences, including inferences that are, in the court's words, untenable, forced, unnatural. So the standard is such that defendants counsel are given quite a bit of leeway to specifically point the jury to the theory of the case. And here, Mr. Johnson's trial counsel was not permitted to draw all the possible inferences. For that reason, it was an abuse of discretion. All I'm getting at is, that's what I'm trying to understand, is when it is an abuse of discretion, and when is it simply a reasonable exercise of discretion? When the defense gets to argue its basic theory, that you shouldn't trust the officer's testimony. Yes, Your Honor. Is the argument here that where you have, this is such a demonstrative demonstration of this, that it's just blatantly an abuse of discretion not to allow the defense to argue this? I think, yes, Your Honor, it's certainly right that the more evidence supporting an inference, and the more that the inference cuts to the core of a defendant's case, the more likely it is an abuse of discretion. I need specifics, because I'm thinking of gruesome cases where the defense wants to introduce two boxes of photographs of the brutal stabbings or the killings of people. And the district court says, well, you can introduce one box, but not two. Or she refines it even more. You can reduce 10, and that's it. And I'm trying to understand why you think this is a different situation, because I'm suggesting there that we normally defer to the district court on matters of inflaming the jury, and that would be so in the gruesome picture case. I'm trying to understand this, and I do understand your theory, but I want to understand how it works in this case. Yes, Your Honor. If the district court let you put in two of the three inferences, what is it about this third inference that is so devastating to getting the theory of the defense before the jury? Yes, Your Honor. Under your hypo, the district court certainly has discretion as to limiting the amount of evidence in your hypo, permitting one box, verse two, or two boxes, verse three. But once that evidence is admitted, and it's already before the jury, the question for closing argument is whether trial counsel is permitted to draw the jury's attention to that specific evidence. But I mean, the district court, didn't the district court premise its ruling on the legal theory that you don't have to allow an argument of evidence that's not been admitted? And that's, you know, that's what the district court said. Now, if you agree with that, I don't see how that can be an abuse of discretion. And I think the district court said that what went on in Kentucky or wherever it was did not involve tampering. And so the district court was essentially saying, you don't have any foundation, so to speak, and that's that. So I'm not letting it in. Yes, Your Honor, I think... I mean, do you agree with that legal premise, which is what the district court was relying on? We're not going to let you put on an argument that does not have any kind of evidentiary premise? Yes, Your Honor. Certainly, I agree that if there were no evidence supporting an inference, trial counsel wouldn't be permitted to argue that. In this case, though, trial counsel didn't want to argue that this agent tampered with evidence. That's to say, trial counsel didn't want to suggest that this agent testified about or produced photos about things that were not actually in evidence. But rather, trial counsel wanted to argue that perhaps this agent had exaggerated the state of evidence. I don't know if that makes sense. There are subtle, but I think it's meaningful in this case because, for example, if the flechettis were not in the device but separate from the device, if a fuse were not in the device but separate from the device, if powder were not in the device but separate from the device, that would make a difference as far as whether that were a completed device or whether that were a combination of parts. It would undermine or might, in the eyes of the jury, undermine the jury's understanding of Mr. Johnson's culpability, number one, and whether he had actually manufactured or possessed items barred by the statute. All right. Counsel, let me make sure my colleagues don't have further questions for you at this time. No, I don't. Government, we'll give you some time for rebuttal. Thank you. Thank you. Mr. Coleman. Thank you. Good morning, Your Honors. Nick Coleman for the United States. I'd like to begin by addressing the question of the merger of appellant's convictions under the D.C. Code Weapons of Mass Destruction statute before briefly addressing the closing argument issue. We respectfully submit that appellant's convictions for possession of two weapons of mass destruction under the D.C. Code do not merge, and I think that there is a crucial distinction to be drawn between the statutes that appellant is citing, which deal with the carrying of weapons, a prohibited carrying of weapons, or the possession of those weapons during the commission of another offense, as opposed to the statute here, which is intended to implement an absolute ban on a certain kind of weapon, in this case, a weapon of mass destruction. The statutes are not, in fact, equivalents, and thus the legislative intent, I think, is much different. If you take a look at the, certainly at the legislative history and at the statute itself, it's quite clear that what the D.C. Council was trying to do was to essentially implement an absolute ban on the possession or manufacture of weapons of mass destruction within the District of Columbia. That ban would be undermined, we respectfully submit, if the court were to take a sort of in-for-a-penny, in-for-a-pound approach, in which there's no difference between the possession of 20 weapons of mass destruction, which of course could then be placed all over the city, as opposed to simply one. And I think it's telling that as... If the person is found placing them in 20 different places, then, and it would allege that there were 20 different acts of possessions, that might be one thing, but it seems like the argument here is that because they were found in the same place, in this, you know, boxes, either the same box or boxes right next to each other in the same house, and the allegation didn't suggest that they were found in two different places, then that's one act of possession. And I mean, I guess I could see it either way, but you would agree, I think, that the DC opinions are the relevant body of opinions, right, for a DC statute. So in other words, if that's right on point, we would be bound by that. So if that's the case, if there's no dispute about that, then Ms. Williams did point out Bean, and I know that you're saying carry is different possession, and certainly they're different words, but what is the difference? Because carrying and possessing are both things you do with a weapon, and are you suggesting that if this statute were the exact same, except it just barred carrying weapons of mass destruction, that there would be a different result as between carrying a weapon of mass destruction and possessing or manufacturing a weapon of mass destruction? Certainly, that would be a much harder case for the government to argue. I do think that there is a significant difference here, and part of the reason why is if you look at, although we tend to think sort of colloquially as the carrying a pistol without a license statute, the carrying a dangerous weapon statute, as implementing a ban on firearms within the district. Technically, that's not actually what they were doing. The firearm itself was not directly prohibited by any of those statutes. The mere possession of the firearm was not prohibited. It was prohibited only under certain circumstances. One, you could not carry it on your person if you did not have a license to do it. Now, of course, the district didn't issue licenses until recently. You also couldn't have an unregistered firearm. Now, that was the statute analyzed in Hammond, which of course we've the better analogy here. But even things like knives, which are covered by the carrying a dangerous weapon statute, it's not that the item itself was banned or banned under all circumstances. It was only its carrying or use under certain circumstances that was prohibited. Not so here with the weapons of mass destruction statute. That simply says you cannot possess it. You cannot manufacture it. You cannot possess it. This statute is different in kind. It's intended very clearly to implement an absolute ban. I'm sorry. Go ahead, Shree. No, please, please, please. The D.C. mean, I think, if I remember correctly, they're setting a presumption that is inconsistent with what, in other words, if there is a benefit of the doubt, it would go to the defendant here, I'm reading the case law and not go your way. And this is an odd statute because a violation can be punished by imprisonment for life. So whether you have one or 600 is not going to make any difference. I realize this is very close in that there's no clear guidance in the evidence. So you're trying to, we're trying to scratch out, well, where do we look? The D.C. case law is not supporting you as I read it. I just don't see where you have any strong support for your position. We're looking to see whether someone possessed a weapon of mass destruction, one or 700. And if so, there's a possibility of imprisonment for life. And I don't see how you get multiple indictments out of that. I just don't see it out of the line. I see what you're saying, but it seems to me if there's an ambiguity here, our sense in these criminal cases is it cuts against the prosecution. You've got to have something better than, well, but you could read the language our way. That doesn't work for me in any of that. And I don't see anything in the D.C. case law that works for you. So I think that Hammond, Your Honor, I respectfully submit, is instructive here. In Hammond, obviously there were arguments to be had on both sides as to whether or not the possession of an unregistered firearm statute should be read to, that its unit of prosecution should be the firearm or whether it should just be the possession of any amount of unregistered firearms. And the court there looked carefully at the purpose behind the statute and both its language and what it was designed to implement and concluded, in fact, that the unit of prosecution was the firearm. I do agree with you that under Bean, if there are serious doubts, then in general, those must be resolved in favor of the defendant. I mean, that's a basic implementation of the rule of lenity. But I think, again, I don't think that there is here, you know, to borrow the sort of lenity cases, the kind of grievous ambiguity that requires this court to conclude that, again, in for a penny, in for a pound. It has to be a grievous ambiguity? Well, that's what the Supreme Court did say in Chapman, Your Honor. And I understand exactly what those words mean can be argued. They're right. It's clearly an ambiguity. I'll give you that. And I think it's a very clear ambiguity. But and if you have that, it seems to be that's enough for you to be in trouble. And then it's the oddity in this statute. It takes one for you to get the worst of what the D.C. Council had in mind. All you need is one. Well, except that I think, though, I do understand Your Honor's point about the sort of very severe potential penalty. But of course, it just says up to life. There's no mandatory. No, no, no, no. I understand the limitations of my it's instinct. Now we're trying to figure out where you go with this. And if you don't have anything more than you're presenting, I think it's a troublesome argument. Well, I do think, though, that the implications of what appellant is arguing are also equally troublesome. If you know, obviously, here, appellant was not charged with manufacturing a weapon of mass destruction. But to take a point that Judge Serena Boston brought up that under appellant's argument and appellant, I think, forthrightly acknowledges the implication of appellant's argument is that you could manufacture as many of these weapons of mass destruction as you want and you would face only one conviction. I don't think that is a reasonable implementation of a conviction for life. I suspect that it weighs very heavily in the sentencing. If someone manufactures one as opposed to 27, that's going to affect how the sentencing is going to go. And the sentencing has the possibility of up to life for one or up to 27. And so that's why the argument you're advancing just doesn't ring true to me, because if there are multiple things going on, that will be taken account of in sentencing. And the sentencing goes up to life for one and as many more beyond one as you find. So, I mean, I just, it just doesn't ring true as a compelling argument in this situation. The language, and I've gone back and forth in it, but the language just doesn't ring true. And lenity, for me anyway, is a real concern here, the rule of lenity. And I understand your honor's concerns. Obviously, I think, you know, I'm not saying that one can't make an argument. The question is whether or not there is sufficient ambiguity or lack of clarity to require that. Can I ask you one question as a follow-up? Yes, your honor. The way you were drawing the distinction, it sounds to me in response to both of our questions, is between a ban and a non-ban situation. And, but with the controlled substances cases, I think there's a ban, right? You can't possess the controlled substance, period. They just want to root out the possession of the controlled substance. But then the controlled substance cases come out the same way as being, because you have Briscoe where, you know, marijuana is found in two different places in the same house, but it was considered to be one act of possession of marijuana, even though that's a ban, a ban statute, I think. Understood. I do, I do have two responses on that, your honor. First of all, even when you're talking about the same substance, the way D.C. statutes are much like the federal statute, they are based on the amount that you have of the substance. So it's not that if you have two tons of marijuana, you are subject to the same penalty as if you have two ounces. In other words, those statutes are actually structured in a way that takes into account how much of it you have. It's not so much that it's based on whether you've split up your amount into a couple of different places, but it takes the whole and it tries to figure out how much you actually have. Well, I think it's like this takes into account how much by having sentencing up to life. Well, and that's where, you know, that's, that's where if, if there, if you have to address that is we're looking at someone who not just has one little, I don't mean to minimize it, one little weapon of mass destruction, or really has this huge warehouse at home, that's going to come into it, be taken into account. Right. And I think though, however, when we, we also need to implement sort of what the legislature wanted to do. And the question is whether it wanted it to leave it purely to the discretion of a sentencing judge, as opposed to, you know, should each device be separately punishable? Okay. I think, you know, and again, I would simply conclude with the idea that I, I strongly suspect that the council members, if you would ask them would have thought that each device was separately punishable. And that by implementing a ban, that that's what they intended to do. So we would respectfully submit that that is what I think you want to go there. Cause if I were teaching a class with the council member, and I said, here's the hypothetical, I suspect more would vote the way I'm suggesting. That is, if you, do you need more than one? But in any event, I hear you. Very well, Your Honor. I'd like to proceed to, to, to address the closing argument question. I'm sorry, Your Honor. Why don't you take a minute to address the closing argument? Yes. So, so, so the main problem I have here with appellant's argument is that appellant now is talking about how apparently appellant was not permitted to argue that the agent distorted the evidence. I don't recall the word distort being used before the if you look at page 295 of the appendix the transcript here, what appellant in appellant's council was asking for permission to argue that agent Campbell did in fact tamper with the evidence. Appellant here today seems to be saying that that's not what appellant wanted to do, but that's certainly how it was phrased to the district court. I think the court correctly concluded that the Kentucky, the, the, the ruling from Kentucky was not a ruling that agent Campbell had tampered with any evidence. I'm not entirely sure what distort means here, but if the question is whether he exaggerated or mishandled evidence or shouldn't be credited in describing that evidence, he was permitted to do all of that. The only thing he was not was over tampering, right? Being able to, yes, exactly. Well, that was what I thought, but go right. And, and that is, that is, but, but I haven't heard appellant yet argue that that is specifically what appellant should have been allowed to do. But as far as I can tell, that is the only thing that appellant was not permitted to argue. And it seems to me that the district court permitted everything else. So again, I guess it depends on what appellant means by distort, but if by distort exaggerate or mischaracterize or, you know, if, or just shouldn't be believed in about the, the description that was all permitted. And so I don't think certainly appellant has shown any abuse of discretion in how the district court approached how appellant could use that prior ruling. If there are no further questions, would respectfully submit that the judgment should be affirmed as we've stated with the exception that certain counts should be vacated as merged and the case should be remanded for consideration of the ineffective assistance of counsel claim. Thank you. Thank you, Mr. Coleman. Ms. Williamson, we'll give you two minutes for your rebuttal. Thank you, your honors. First on the point about the district of Columbia weapons of mass destruction counts. The, the court should view being as the, as guiding the court's analysis here being sets out the exact analysis this court should follow. It's important, your honors, that the DC council, when it enacted this statute was legislating against the backdrop of these existing cases. Cormier is a case from the 1950s. Bean is a case from the 1990s. We should presume the court should presume that the district of Columbia council knew that these cases existed, knew that it would have to clearly express its intent if it intended for multiple punishments to be permissible under this statute. As your honor, judge Edwards pointed out, we believe that the proper way that the district of Columbia council accounted for differences in conduct was through, through punishment, permitting punishment up to life imprisonment. And the court can also look to a different context. The, the nine 22 G statute where all courts of appeals have held that multiple violations of that statute count merge into one conviction where, where a defendant has several items. On, on counsel's point about the closing argument at page 293 of the appendix, trial counsel specifically said that he did not wish to argue that there was any tampering. He, he suggested that there might have been evidence on the record on which that inference would have been permissible, but that wasn't the inference he sought to argue. He sought to argue that the, that the agent in this case had distorted or exaggerated evidence. And, and that was the, the way that the district court curtailed the argument. If your honors have no more questions, we would respectfully request that the court vacate Mr. Johnson's six of Mr. Johnson's convictions because of the abuse of discretion on closing argument. We would also request that the court vacated and remand this matter for a, for a hearing on the evidentiary on the, excuse me, on the ineffective assistance of counsel claim and vacate the duplicate of counts. Thank you. Your honor. Thank you to both counsel, Ms. Williamson, you were appointed by the court to represent appellant in this matter. And the court thanks you for your assistance. Thank you, your honor. We'll take this case under submission.
judges: Srinivasan, Rogers, Edwards